## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

SHALOM BARANES ASSOCIATES, P.C.,

      Plaintiff,

      v.

LAUREN CONDOS, LLC;                Civil Action No. TDC-15-1980
1788 HOLDINGS, LLC; and
ROBERT M. SWEDROE ARCHITECTS—
PLANNERS A.I.A., P.A.;

      Defendants.

## MEMORANDUM OPINION

This copyright infringement action is before the Court on two Motions to Dismiss, the first filed by Defendant Robert M. Swedroe Architects & Planners, P.A. ("Swedroe") and the second filed jointly by Defendants Lauren Condos, LLC ("Lauren") and 1788 Holdings, LLC ("1788 Holdings"). Having reviewed the Complaint and the briefs, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6 (2016). For the reasons set forth below, the Motions are DENIED.

## BACKGROUND

In May 2003, Plaintiff Shalom Baranes Associates, PC ("SBA") entered into an agreement with Triumph Development, LLC ("Triumph") to prepare architectural plans for a proposed condominium project at 4901 Hampden Lane ("4901 Hampden" or "the Property") in Bethesda, Maryland. Triumph was seeking to develop condominiums on the site, which was owned by Hampden Lane, LLC. The SBA–Triumph agreement divided the project into two phases. Phase I involved SBA's preparation of architectural plans and related documents for the

site and required SBA to receive approval of the project from all relevant Montgomery County governing bodies. If SBA fulfilled its obligations in Phase I, the agreement required the parties to proceed to Phase II, the preparation of additional plans needed to obtain a building permit and construction contract for the approved condominium project. The agreement gave Triumph a limited, non-assignable license to use SBA's designs for the sole purposes of developing and building 4901 Hampden. No copyrights were assigned under the agreement.

SBA drafted a development plan, a preliminary plan, and a site plan ("the SBA Plans") for 4901 Hampden, onto which it placed its copyright notice. On July 26, 2006, the Montgomery County Council ("the Council") approved SBA's development plan. As part of its approval, the Council rezoned the site to the "TS-R zone," a change that not only imposed certain maximum and minimum specification requirements for buildings to be constructed on the site, but also allowed the County to impose additional, customized requirements beyond those generally required for TS-R zone buildings. Together, these requirements are termed "Binding Elements."

The majority of the Binding Elements imposed on the 4901 Hampden development were not strictly required as a result of the TS-R zoning designation, but were established through a multi-year process by which SBA adopted design changes based on feedback from Montgomery County officials and local citizens groups. At the end of this process, the Montgomery County Planning Board ("Planning Board") approved the SBA Plans and adopted certain characteristics of the final design as Binding Elements. These Binding Elements included the following items that were not specifically required by the TS-R zoning designation: (i) 40-70 dwelling units; (ii) building site coverage of no more than 65 percent; (iii) public use space of 2,692 square feet, increased from the previously required 2,255 feet; (iv) recreation space of 5,990 square feet, increased from the previously required 4,510 feet; (v) a building height of no more than 70 feet,

2

with the northwest corner limited to 60 feet; and (vi) setbacks of 13 feet from Hampden Lane and Woodmont Avenue, two feet from Montgomery Lane, 18 feet from the adjacent townhouse lot, and 28 feet from the adjacent apartment lot.

On March 19, 2008, the Planning Board provided final approval of the site plan, marking the end of Phase I of SBA's agreement with Triumph. Once the SBA Plans had been approved by all the relevant County authorities, development of 4901 Hampden had to be conducted in accordance with those plans, with any deviation requiring submission of a proposed amendment for approval.

After the completion of Phase I, Triumph failed to obtain adequate funding to purchase 4901 Hampden and break ground on the project. SBA and Triumph accordingly terminated their agreement in May 2008, a termination that extinguished Triumph's limited, non-transferable license in the SBA Plans.

By the fall of 2012, 1788 Holdings became interested in developing 4901 Hampden and began discussions with SBA about proceeding to Phase II of the project with the SBA Plans. In the course of these discussions, SBA informed 1788 Holdings of its copyright in the SBA Plans and that any use of those Plans was contingent on SBA being retained to prepare the additional plans needed for Phase II of the project. In November 2012, 1788 Holdings informed SBA that SBA would not be retained for Phase II. Instead, 1788 Holdings retained Swedroe to provide the Phase II architectural services. On December 13, 2012, SBA registered its copyright in the SBA Plans, including copyrights specifically for its technical drawings, site plans, and architectural renditions.

According to SBA, 1788 Holdings and Swedroe used the SBA Plans as the basis for their own plans ("the Swedroe Plans") and made only minor changes to avoid having to redo the

3

entire County approval process. At some point in 2012, the Planning Board approved an amendment, presumably proposed by 1788 Holdings and Swedroe, to the previously approved requirements for the development of 4901 Hampden. That amendment reduced the minimum number of dwelling units in the building from 50 to 40 and stipulated that a minimum of 15 percent of the units would be moderately priced. Specifically, the amendment made "no changes" to the building's "height, bulk, or … arrangement" or to the building's "creative and innovative design" in its use of a "varied height limit." Am. Compl. ¶ 34. In 2014, Swedroe received approval for a second amendment, this one increasing the height of an elevator shaft by 6.5 feet, increasing the public-use space by 445 square feet, and permitting "cosmetic changes" to the northeast and northwest corners of the building. *Id.*

In SBA's estimation, these two amendments left intact the bulk of the Binding Elements derived from the SBA Plans. SBA thus alleges that the Swedroe Plans were based on and therefore violated SBA's copyright in the SBA Plans. In particular, SBA asserts that the Swedroe Plans include an "overall building footprint and envelope, including its mass, its height, and its placement on the site" and "numerous unique features" that are "essentially the same" as those in the SBA Plans. *Id.* ¶ 29. SBA points to 14 specific aspects of the two designs, "by way of example, and not limitation," that it asserts reveal that Swedroe copied its plans from SBA:

    (i)    the two buildings share the same overall footprint;

    (ii)   the two buildings share the same overall vertical section (7 floors plus an English basement exposed only on the east elevation);

    (iii)  the two buildings share the same creative and innovative design that employs a varied height limit wherein the two buildings are 70 feet for most of the building but drop to 60 feet at the northwest corner;

    (iv)  the two buildings contain the same number of square feet (approximately 94,218);

    (v)   the two buildings have the same building lot coverage (65%);

    (vi)  the two buildings have the same setbacks (13 feet from Hampden Lane and Woodmont Avenue, 2 feet from Montgomery Lane, 18 feet from the adjacent townhouse lot, and 28 feet from the adjacent apartment lot);

4

(vii)   the two buildings have the same amount of public use space (2,692 square feet) and recreation space (5,990 square feet);

(viii)  the two buildings have the same location of the public use space and the recreation use space;

(ix)    the two buildings have their main entrances and primary focus in the same location;

(x)     the two buildings have their parking entrances in the same location;

(xi)    the two buildings have the same unique features providing for direct entry from first floor and English basement units to the street;

(xii)   the two buildings have the same vehicular circulation pattern;

(xiii)  the two buildings have the same four bay (or tower) structure with: the bays composed of large vertical windows, the bays connected by balconies, [and] the bays capped by large flat rectangular caps;

(xiv)   the exterior materials of the two buildings are the same (although it appears that the exterior materials in the northeast and northwest corners of the building were modified in a Development Plan amendment submitted by Defendants on April 18, 2014 and approved by the Montgomery County Council on September 9, 2014).

*Id.* SBA contends that these design elements consist of "unique, original expression" not dictated by any zoning requirement. *Id.* Based on these similarities in design, SBA concludes that Swedroe, acting with the knowledge of 1788 Holdings and Lauren, used the copyrighted SBA Plans, available through public records, as the basis for the purportedly new design contained in the Swedroe Plans.

By early 2014, 1788 Holdings had formed Lauren as an entity to take title to the Property. On January 27, 2014, Lauren formally acquired the Property.   At some point in 2015, construction began at 4901 Hampden in accordance with the allegedly infringing Swedroe Plans.

On July 6, 2015, SBA filed a copyright infringement action in this Court.  In response to Rule 12 motions filed by Defendants, SBA amended its complaint on October 16, 2015.  In the Amended Complaint, SBA alleges five causes of action under 17 U.S.C. § 501 (2012):  (1) copyright infringement by direct copying, against all Defendants; (2) copyright infringement through a derivative work, against Swedroe; (3) copyright infringement of an architectural work, against all Defendants; (4) contributory copyright infringement, against 1788 Holdings and

Lauren; and (5) vicarious copyright infringement, against all Defendants. As relief, SBA seeks actual damages, statutory damages pursuant to 17 U.S.C. § 504, and attorney's fees pursuant to 17 U.S.C. § 505. SBA also seeks injunctive relief. In the original Complaint, SBA sought to have construction of 4901 Hampden halted, but in the Amended Complaint, SBA seeks only to have Defendants enjoined from constructing any additional buildings using the SBA Plans.

## DISCUSSION

In response to the Amended Complaint, Swedroe filed a Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), to which it attached multiple exhibits. In the body of the Motion, Swedroe urges the Court either to consider the attached exhibits as integral to the Complaint or to convert the Motion into a motion for summary judgment. 1788 Holdings and Lauren (collectively, "the 1788 Defendants") filed a joint Motion to Dismiss and/or for Partial Summary Judgment, to which they attached multiple exhibits. Like Swedroe, they urge the Court to consider the attached exhibits as integral to the Complaint or to convert the Motion to one for summary judgment. In addition to seeking summary judgment on the causes of action, all Defendants seek summary judgment on the issues of statutory damages and attorney's fees, arguing that SBA is not entitled to either because it did not timely register its copyrights.[1]

## I.    Legal Standards

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal

---

[1] The 1788 Defendants also ask the Court to grant summary judgment on the issue of injunctive relief as to construction of 4901 Hampden. Because SBA has voluntarily abandoned that claim for relief, the Court need not address this issue.

6

conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

In their Motions, Defendants rely on facts asserted in exhibits attached to their briefing, which include a declaration from Michael Agnoli, a partner at Swedroe; an affidavit from Larry Goodwin, a principal at 1788 Holdings; various architectural drawings of the building designed by Swedroe; and correspondence between the parties leading up to this lawsuit. Swedroe expressly asserts that its attached evidence may be considered by the Court on the Motion to Dismiss because the evidence is integral to the complaint and authentic. The 1788 Defendants make no such express assertion, but in weaving a large number of new facts into their argument for dismissal, proceed on the assumption that those facts may be considered by the Court when deciding whether to dismiss SBA's Amended Complaint.

"[A]s a general rule, extrinsic evidence should not be considered at the 12(b)(6) stage." *Am. Chiropractic Assoc., Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (internal quotation marks and citation omitted). A court may consider documents attached to a motion to dismiss only if those documents were "integral to and explicitly relied on in the complaint," if the plaintiff had "actual notice" of those documents, and if the plaintiff does not challenge their authenticity. *Id.* This standard is not met here. The affidavits and declarations that Defendants attach to their Motions provide a chronology of interactions among them leading up to their finalized plans for 4901 Hampden, a chronology meant to establish that the Swedroe Plans were developed independently from the SBA Plans. Any claim that SBA explicitly relied on, or had notice of, Defendants' internal project development correspondence would be

frivolous, particularly considering that the declarations and affidavits Defendants append to the Motion were executed after SBA filed suit. Further, Defendants do not claim that the various attached architectural drawings sent by Swedroe to the 1788 Defendants were ever made available to SBA. Defendants' various exhibits therefore cannot be considered in evaluating the Motions to Dismiss.

Alternatively, Defendants suggest that this Court convert the Motion into one for summary judgment, at which point the Court could consider the exhibits. SBA, citing Federal Rule of Civil Procedure 56(d), asserts that summary judgment would be premature because it has not yet had time to conduct discovery. SBA Opp'n to Defs.' Mot. Dismiss ("Opp'n") at 8, ECF No. 45. Although a party may move for summary judgment before the commencement of discovery, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). That is the situation here. Defendants' exhibits are aimed at establishing that Swedroe engaged in an independent design process to formulate its plans for 4901 Hampden, that Swedroe's designs are not substantially similar to SBA's, or both. SBA has not yet had an opportunity to test either of these assertions by adducing evidence related to Defendants' project development process and the possible similarities between the designs. Conversion to summary judgment now would short circuit this necessary stage of the litigation. The Court therefore rejects Defendants' request to convert their Motions to Dismiss into Motions for Summary Judgment.

## II.    Copyright Infringement

In order to state a *prima facie* case for copyright infringement, a plaintiff must allege facts establishing that: (1) it owned copyrighted material; and (2) the infringer copied protected elements of that material. *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 143 (4th Cir. 2000); *Lyons Partnership, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001) (stating that "[t]o establish a claim for copyright infringement, a plaintiff must prove that it owned a valid copyright and that the defendant copied the original elements of that copyright") A certificate of a registration of a copyright constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).

The Architectural Works Copyright Protection Act ("AWCPA"), Pub. L. No. 101-650, §§ 701-706, 104 Stat. 5089, 5133-34 (1990), expressly expanded copyright protection to architectural works. 17 U.S.C. § 102(a)(8). AWCPA defines an architectural work as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings." *Id.* § 101. Such a work includes "the overall form as well as the arrangement and composition of spaces and elements in the design." *Id.* The AWCPA does not extend copyright protection to "individual standard features, such as common windows, doors, and components," but instead to the "arrangement of unprotectable elements into an original, protectable whole." H.R. Rep. No. 101-735 (1990) *as reprinted in* 1990 U.S.C.C.A.N. 6935, 6949, 6951 ("House Report"); *see also* 17 U.S.C. § 101. This requirement of an original whole means that AWCPA does not protect "[s]tandard configurations of spaces" or space configurations that are functionally determined. 37 C.F.R. § 202.11(d)(2) (2016); House Report at 6952 (stating that "[p]rotection would be denied for functionally determined elements"). In the context of copyright, the level of creativity required for establishing originality is "extremely

low." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (internal citations omitted).

### A.    The Swedroe Motion

None of the Defendants contests that SBA had a copyright in its design. Swedroe, however, asserts that the 14 design elements SBA identifies as evidence of infringement do not constitute protectable expression under copyright law and thus concludes that SBA has failed adequately to plead that Defendants copied any protected elements of the SBA Plans. Swedroe mounts this attack on two fronts. The first is that the 14 design elements that SBA cites are standard features exempted from copyright protection; the second is that the SBA Plans are functionally determined by zoning law and therefore fall outside of copyright protection. Neither campaign succeeds.

As to Swedroe's first contention, even if the Court accepted that all of SBA's 14 listed design elements were standard features, Swedroe cannot escape that copyright protection extends to an original configuration of otherwise unprotectable elements, and that "originality" in this context is not a high bar. Even "a slight amount" of creativity is sufficient, "no matter how crude, humble or obvious it might be." *Feist*, 499 U.S. at 345 (internal citations omitted). *See Universal Furniture Intern., Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 430 (4th Cir. 2010) ("The mere fact that component parts of a collective work are neither original to the plaintiff nor copyrightable by the plaintiff does not preclude a determination that the combination of such component parts as a separate entity is both original and copyrightable."). Considering how little is required for a showing of originality, and considering that on a motion to dismiss the Court is obligated to construe the facts in favor of SBA, the Court cannot conclude that SBA's 14 design elements, in the aggregate, are so unremarkable as to be unworthy of

copyright protection.   Because of this procedural posture, Swedroe's reliance on *Sari v. America's Home Place, Inc.*, 129 F. Supp. 3d 317 (E.D. Va. 2015), decided on summary judgment, is unpersuasive.

Likewise, Swedroe's argument that those 14 elements are not protected by copyright law because they are essentially identical to the site's zoning requirements is unconvincing.  Swedroe shifts between two versions of this argument.  The first is that the SBA Plans are not protectable because their elements were determined by the zoning laws.  SBA, however, bases its copyright claim on its 14 design elements and expressly asserts that none were dictated by zoning requirements.  To the extent that some of the design elements align with Binding Elements, SBA asserts that the Planning Board adopted the Binding Elements for 4901 Hampden in order to *codify* SBA's design, not that SBA's design was pre-determined by existing zoning requirements.

Swedroe's second variation on this theme is that any protectable elements of the SBA Plans were Binding Elements incorporated as conditions of the County's approval of the development of 4901 Hampden, and, as a consequence, SBA lost any copyright in its Plans because all subsequent architectural plans would necessarily have to conform to those requirements.  This argument fails because it overstates the limitations on any new design plans for 4901 Hampden.  On this point, the Court finds *John G. Danielson, Inc. v. Winchester–Conant Properties, Inc.*, 186 F. Supp. 2d 1 (D. Mass. 2002), instructive.  In *John G. Danielson, Inc.*, the court rejected an analogous argument that there was no copyright protection over architectural plans because a town's approval of the project was conditioned on compliance with a restrictive covenant, signed by the local planning board, requiring construction to proceed pursuant to those plans.  *Id.* at 6.  The court reasoned that because that restriction could be lifted through a vote of

11

the local government, it was not the case that the approved plans were the "*only* way the property could be developed." *Id.* at 23.

That is the situation here. The County's adoption of SBA's specific design scheme did not mean that 4901 Hampden could be developed in only one way. Changes could be made with the approval of the Planning Board. Indeed, Swedroe sought and obtained permission to make certain changes. Where the design remained malleable, this Court concludes that the County's adoption of the Binding Elements did not foreclose a copyright claim by SBA. As the *John G. Danielson* court noted, "copyright protection traditionally afforded to architectural drawings would be gutted" if that protection disappeared "every time a government body incorporated the drawings into a zoning variance, restrictive covenant, or special permit to build." *Id.* at 24. The argument that the 4901 Hampden site had only one possible form of expression such that SBA can maintain no copyright action in its plans for that site therefore fails. Swedroe's Motion to Dismiss the Amended Complaint is denied.

### B.     The 1788 Defendants' Motion

The 1788 Defendants seek dismissal on the grounds that 12 of the 14 design elements SBA cites are not protectable under copyright law. As discussed above, this argument fails because while individual elements of a design may not themselves be copyrightable, copyright protection extends to "the overall form as well as the arrangement and composition of spaces and elements in the design," 17 U.S.C. § 101, including the "arrangement of unprotectable elements into an original, protectable whole," House Report at 6951. *See supra* part II.A.

The 1788 Defendants acknowledge that two of SBA's design elements—the four-bay tower structure of the building and the building's exterior materials—are protectable.

12

Nevertheless, they further argue that they are entitled to dismissal because the Swedroe Plans are not "substantially similar" to the SBA Plans as to those elements.

"To establish a claim for copyright infringement, a plaintiff must prove that it owned a valid copyright and that the defendant copied original elements of that copyright." *Lyons Partnership*, 243 F.3d at 801. In the absence of direct evidence of copying by the defendant, the plaintiff may establish a presumption of copying by alleging facts showing that the defendant had "access to the copyrighted work and that the defendant's work is 'substantially similar' to the protected material." *Universal Furniture*, 618 F.3d at 435. Here, because the SBA Plans were publicly available, there is no dispute that Defendants had access to those plans. The 1788 Defendants instead argue that SBA fails adequately to allege that the Swedroe Plans are substantially similar to the SBA Plans.

Substantial similarity requires showing a close resemblance between "both the ideas of the two works and the expression of those ideas." *Dawson v. Hinshaw Music Inc.*, 905 F.2d 731, 732 (4th Cir. 1990). Determining whether the ideas of the two works are substantially similar involves an "extrinsic" or "objective" inquiry for which expert testimony is often required. *Id.* at 733. Accordingly, it is premature to resolve the similarity of ideas on a motion to dismiss.

Determining whether the expression of the ideas is substantially similar involves an "intrinsic" or "subjective" inquiry. *Id.* This assessment requires a consideration of the "total concept and feel" of the works, a determination considered to be the domain of the "ordinary lay observer." *Id.* Here, the 1788 Defendants argue that no reasonable juror could conclude that the SBA Plans and the Swedroe Plans were intrinsically similar. They include in their brief purported images of the two buildings, the source of which is never identified, and insist that no person could look at the two images and find any resemblance between them. The Court

13

declines the invitation to engage in this factual assessment at this early stage of the case. The Court has already rejected Defendants' requests to consider evidence outside the Amended Complaint or to convert the Motions into motions for summary judgment, so it cannot consider the unsourced images or the affidavits of 1788 Holdings and Swedroe officials who describe differences between the plans. *Am. Chiropractic*, 367 F.3d at 234. In the Amended Complaint, SBA asserts that the Swedroe Plans copy key, copyrightable elements of the SBA Plans. On a motion to dismiss, the Court must construe all facts and draw all plausible inferences from those facts in favor of SBA. *Albright*, 510 U.S. at 268. Particularly in light of Swedroe's contention that any plans for 4901 Hampden would need to draw on the SBA Plans because the key elements of those Plans were dictated by the zoning requirements, the Court is hard pressed to conclude that SBA's assertion of substantial similarity is implausible. The Court therefore denies the 1788 Defendants' Motion to Dismiss on the issue of substantial similarity.

## III.   Statutory Damages and Attorney's Fees

Defendants also seek dismissal of SBA's claims for statutory damages under 17 U.S.C. § 504 and attorney's fees under 17 U.S.C. § 505. Generally, "no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration." 17 U.S.C. § 412(2). Making the "extraordinary remedies" of statutory damages and attorney's fees contingent on prior copyright registration was designed to encourage the prompt registration of copyrights. *Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.*, 832 F. Supp. 1378, 1395 (C.D. Cal. 1993) (internal quotation marks and citation omitted); *see Singh v. Famous Overseas, Inc.*, 680 F. Supp. 533, 535 (E.D.N.Y. 1988) (stating that "Congress's evident purpose" in enacting 17 U.S.C. § 412(2) "was to induce those owning copyrightable works to register them promptly").

14

Thus, to secure statutory damages and attorney's fees, SBA must establish that the infringement of its copyright began after December 13, 2012, when SBA registered its copyright. Defendants assert that SBA cannot do so. In support of this position, Defendants cite to exhibits attached to their Motions, including declarations of individuals involved in Defendants' efforts to develop 4901 Hampden, Swedroe architectural drawings dated before December 13, 2012, and correspondence between the parties prior to that date in which SBA threatens suit for copyright infringement.

As discussed above, however, the Court cannot and will not consider evidence outside the four corners of the Amended Complaint in resolving the Motions to Dismiss. *Am. Chiropractic*, 367 F.3d at 234. The Amended Complaint does not specify when the infringing activity began. It is premature to accept Defendants' proffered evidence on this point without permitting SBA to obtain discovery which would allow for full exploration of this issue. Defendants' Motions are therefore denied as to the claims for statutory damages and attorney's fees.

## CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are DENIED. A separate Order shall issue.

Date:   September 14, 2016

THEODORE D. CHUANG
United States District Judge